# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>KRISTOPHER LEE DALLMANN,<br><br>Defendant. | Case No. 2:22-cr-00030-RFB-DJA<br><br>**ORDER** |

Before the Court is Defendant Kristopher Dallmann's Motion for Bail Pending Appeal. ECF No. 768. For the following reasons, the Motion for Bail Pending Appeal is denied.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On August 27, 2019, the indictment in this case was filed in the United States District Court for the Eastern District of Virginia. ECF No. 1. On February 3, 2022, the case was transferred to the United States District Court for the District of Nevada. Id.

There were nineteen counts included in the indictment. The Government alleged that from about 2007 to 2017, Mr. Dallmann, with the assistance of others, operated Jetflicks, an online, subscription-based service that permitted users to stream and download copyrighted television programs without the permission of the relevant copyright owners. The indictment alleged that Mr. Dallmann willfully reproduced tens of thousands of copyrighted television episodes and distributed the programs to individuals throughout the United States. The estimated harm to copyright owners was millions of dollars. Jetflicks operated similarly to Netflix, Hulu, and Amazon Prime Video. For a subscription fee as little as $9.99 per month, Jetflicks enabled its

subscribers to watch an unlimited number of commercial-free television programs, often within days of the episodes' first airings. The company sought to make these programs available on a variety of devices and platforms including Apple TV, Google Chromecast, and Roku. Jetflicks obtained television programs from other sites hosting infringing content. Jetflicks, at one point, claimed to offer more than 183,200 television episodes and have more than 37,000 subscribers.

On June 18, 2024, following a 14-day trial, a jury convicted Mr. Dallmann of one count of conspiracy to commit criminal copyright infringement (Count 1 of the Indictment), two misdemeanor counts of criminal copyright infringement through distribution (Counts 2 and 3), one misdemeanor count of criminal copyright infringement through public performance (Count 4), and two counts of money laundering by concealment (Counts 13 and 14). ECF No. 485.

This Court sentenced Mr. Dallmann to 84 months in prison and ordered him to self-surrender at the institution designated by the Bureau of Prisons on October 17, 2025. ECF Nos. 695 and 739. Mr. Dallmann is currently pursuing an appeal with the U.S. Court of Appeals for the Ninth Circuit. ECF No. 744.

Mr. Dallmann filed the instant Motion for Bail Pending Appeal on October 2, 2025. ECF No. 768. The government filed its response today on October 15, 2025, and Mr. Dallmann filed a reply on October 16, 2025. ECF Nos. 777-78. This Order follows.

**II.  LEGAL STANDARD**

Under the Bail Reform Act of 1984, the Court may only permit bail pending appeal when, among other criteria, the movant establishes that their appeal raises a substantial question of law or fact likely to result in reversal or an order for new trial or reduction in sentence. 18 U.S.C. § 3143(b). A "substantial question" is one that is "fairly debatable." United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985).

The movant also bears the burden of showing they are "not likely to flee. . . if released" by clear and convincing evidence. 18 U.S.C. § 3143(b)(1)(A).

**III.  DISCUSSION**

The ability of this Court to grant Mr. Dallmann bail pending appeal hinges on whether Mr. Dallmann has both sufficiently raised substantial question of law or fact and demonstrated by clear

and convincing evidence that he is not a flight risk. The Court finds he has not met his burden on both factors.

The Court must first note that, while the Court is not denying the Motion based upon untimeliness, the timing of the filing of Motion left the Court will very little time to address the Motion prior Mr. Dallman's surrender date. This later filing was avoidable as the issues raised could all have been raised months earlier.

Mr. Dallmann's motion alleges six issues that he argues raise substantial questions warranting the grant of bail pending appeal. They are as follows: (1) the Court was not allowed to give a deliberate ignorance instruction and that "it is debatable that there was a factual basis" for such an instruction; (2) the Court should not have instructed the jury as a matter of law that streaming is public performance; (3) the Court erred in not defining "commercial advantage or private financial gain"; (4) the Court erred in its jury instructions by using standard criminal law aiding and abetting instead of common-law civil copyright inducement liability; (5) his convictions on copyright infringement through distribution are invalid because he did not personally disseminate the works; and (6) he could not be convicted of conspiracy to reproduce copyrighted works without permission from the copyright owners because any such conspiracy requires the "existence of customers." The Court addresses and dismisses each of these arguments for failure to state a fairly debatable issue.

**A. Arguments Concerning Jury Instructions**

As it relates to Mr. Dallmann's four arguments alleging error with respect to the jury instructions, the Court finds none of these instructions to be in error based on the record. The record also demonstrates that Mr. Dallmann made no objection to any of these instructions at trial.

   **i.** *Deliberate Ignorance Instruction*

Regarding the Court's deliberate ignorance instruction, the Court recently encountered and rejected a similar argument made by Mr. Dallmann's co-defendant. ECF No. 773. Since United States v. Jewell, 532 F.2d 697 (9th Cir. 1976), the Ninth Circuit has repeatedly authorized and upheld deliberate ignorance instructions in a number of specific-intent crimes, including criminal copyright. See, e.g., US v. Shayota, 784 Fed. Appx. 986 (9th Cir. 2019) (upholding a district

court's deliberate ignorance instruction as proper in a case where the defendants had been convicted of conspiracy to commit copyright infringement, squarely addressing the issue Mr. Dallmann argues this case raises for the Ninth Circuit). In addition, the Ninth Circuit has stated that "recklessness or willful blindness theories . . . are valid theories for satisfying the intent element" of criminal copyright. United States v. Anderson, 741 F.3d 938, 948 (9th Cir. 2013). Further, the Court finds that, based on the record wherein Mr. Dallmann claimed not to have knowledge or intent to commit the charged crimes, there was a factual basis for issuing the instruction in this specific case.

### ii. *Alleged Directed Verdict Language*

The Court's instruction that streaming constituted public performance served to define a term for the jury according to applicable law and did not contain "directed verdict" language as Mr. Dallmann argues. This instruction did not infringe upon Mr. Dallmann's ability to present his theory of the case, but rather set forth a relevant definition in line with precedent. See, e.g., American Broadcasting Companies, Inc. v. Aereo, 134 S. Ct. 2498 (2014) (finding that when a company—one that sold a service allowing paying subscribers to watch copyrighted television programs over the internet without permission—streamed the same television program to multiple subscribers, this constituted the transmission of a performance to the public). This instruction did not prevent or impede Mr. Dallmann's main theories of defense which included, inter alia, that he did not knowingly or willfully violate the relevant copyright law and that the government could not prove beyond a reasonable doubt that he knowingly violated copyright law. Finally, not only did Mr. Dallmann not object to this instruction, his trial counsel, as noted by the government, embraced its application noting that the government "put on ample evidence of streaming as part of this case, which is public performance."

### iii. *Lack of Definition Provided for "Commercial Advantage or Private Financial Gain"*

Regarding Mr. Dallmann's third argument, this Court finds the terms "commercial advantage or private financial gain" to be common and readily understandable by the jury and therefore not needing of further definition under the law. See U.S. v. Dixon, 201 F.3d 1223, 1231

(9th Cir. 2000) (specifically holding that a district court did not need "to define 'commercial advantage' and 'private financial gain' because these are common terms, whose meanings are within the comprehension of the average juror.").

### iv. Jury Instructions and Provided Definition for Aiding and Abetting

Mr. Dallmann also challenges this Court's use of the Ninth Circuit model jury instructions for, and the statutory definition of, aiding and abetting. However, Mr. Dallmann has failed to (1) cite to any criminal case or statute supporting his argument that the Court should have instead substituted an instruction based on a theory of common-law copyright inducement liability or (2) persuasively argue why criminal copyright cases should be specially exempt from 18 U.S.C. § 2.

### B. Arguments Concerning the Validity of Mr. Dallmann's Convictions

Outside of jury instructions, Mr. Dallmann raises two arguments challenging the validity of his convictions. This Court rejects both arguments as failing to raise a fairly debatable issue.

### i. Validity of Mr. Dallmann's Convictions on Counts Two and Three

On the first of these, Mr. Dallmann challenges his convictions on Counts Two and Three as invalid, however, he fails to raise a substantial question as to whether his actions fell outside the plain meaning of "distribute," and this Court accordingly finds the convictions valid. See United States v. Budziak, 697 F.3d 1105, 1109 (9th Cir. 2012) (citing United States v. Shafer, 472 F.3d 1219, 1223 (10th Cir. 2007)) (indicating that the plain meaning of "distribute" is to deliver, transfer, disperse, or dispense to others). The Court finds that there was abundant evidence that Mr. Dallmann made infringing material available and accessible to customers of Jetflicks and that his conduct in providing direct and explicit access to such materials falls within the definition of distribution for purposes of the conviction here. See United States v. Shafer, 472 F.3d 1219, 1223 (10th Cir. 2007).

### ii. Mr. Dallmann's Ability to Be Convicted of Conspiracy Without "Customers"

On the final point, Mr. Dallmann argues he could not be convicted of conspiracy to reproduce copyright works without permission because of a lack of customers. However, as laid out in this Court's jury instructions, proving the charged offense requires a showing that (1) there was an agreement between two or more persons to commit criminal copyright infringement by

reproduction; (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act. ECF No. 393 at 107. There is no element requiring the existence of customers. The Court finds that there is not statutory authority or precedent for the Court adding an element to this count in such circumstances.

### C. Risk of Flight

To obtain bail pending appeal, Mr. Dallmann also bears the burden of showing he is "not likely to flee. . . if released" through clear and convincing evidence. 18 U.S.C. § 3143(b)(1)(A). He has not made such a showing. The Court makes this finding based upon a few considerations. First, Mr. Dallmann, on at least one occasion, had a bench warrant issued for his arrest and was detained due to his inability to follow conditions on pretrial release. Second, the PSR notes that there were in fact challenges with Mr. Dallmann in terms of his compliance with his conditions. Third, the Court does not find that it has a complete accounting of Mr. Dallmann's resources or access to resources. The record indicates an ability on his part to use artifices to conceal the source and location of funds. Fourth, Mr. Dallmann is facing for the first time in his life a substantial term of imprisonment. Fifth, the Court finds that Mr. Dallmann has, at best, weak community ties to the District. While he is married to his codefendant, the record indicates several issues with the nature and solidity of this relationship such that the Court does not find that this relationship or any other relationship establish his strong ties to this community. For all of these reasons, the Court finds that Mr. Dallmann has not established by clear and convincing evidence that he is not a flight risk pending appeal.

///

///

///

///

## IV. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** that Defendant Dallmann's [768] Motion for Bail Pending Appeal is **DENIED.**

**DATED:** October 16, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**